UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEBRASKA

| | |
|---|---|
| VIREO SYSTEMS, INC. and NE ENTERPRISES INC., <br><br> Plaintiffs, <br><br> v. <br><br> GNC HOLDINGS, INC., <br><br> Defendant, | Civil Action No. 8:18-CV-00156 |

## DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO DISMISS

Defendant, GNC Holdings, Inc. ("GNC"), by and through their undersigned counsel, respectfully moves to dismiss Plaintiffs Vireo Systems, Inc. ("Vireo") and NE Enterprises, Inc.'s ("NE Enterprises") (collectively, the "Plaintiffs") Complaint under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(7). Plaintiffs have failed to include co-owners of the asserted patents as parties in this action, particularly, the Board of Regents of the University of Nebraska (the "University") and Biovance Technologies, Inc. or its successors or assigns ("Biovance"). Indeed a simple search of the publicly available, USPTO assignment records indicates that the asserted patents were assigned to Vireo and the University, not NE Enterprises. The USPTO assignment records further indicate that a patent to which the asserted patents claim priority thus the inventions in the asserted patents were assigned to Biovance. Plaintiffs' naked assertion that NE Enterprises obtained "all substantial rights" to the asserted patents does not suffice—as courts require written documentation in support, which Plaintiffs have not provided.

The Complaint should further be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) as to at least the '450 Patent in view of a terminal disclaimer filed at the USPTO during prosecution of the '450 Patent. The express language of the terminal disclaimer states that the '450 Patent only remains enforceable as long as it is commonly owned with U.S. 7,608,641. The publicly available assignment records at the USPTO indicate that these patents are not commonly owned, thus, the '450 Patent is unenforceable as a matter of law.

## I.      STATEMENT OF FACTS

**The Parties**

1. GNC is the largest global specialty retailer of nutritional products; including vitamin, mineral, herbal and other specialty supplements and sports nutrition, diet and energy products. (Holst Decl., ¶ 1).

2. Vireo is a Tennessee corporation that claims to have a principal place of business in Madison, Tennessee. (Filing No. 1, ¶ 14).

3. NE Enterprises is a Nebraska corporation that claims to have its principal place of business in Omaha, Nebraska. (Filing No. 1, ¶ 13).

**The Complaint**

4. In the Complaint, the Plaintiff Vireo purports to co-own three (3) asserted patents: U.S. 8,354,450 ("the '450 Patent"); U.S. 8,962,685 ("the '685 Patent"); and U.S. 9,486,424 ("the '424 Patent") (collectively, the "Creatine HCl Patents") with the Board of Regents of the University of Nebraska (the "University"). (Filing No. 1, ¶ 4).

5. The Complaint alleges that Plaintiff NE Enterprises was granted "all of [the University's] substantial rights" in the Creatine HCl Patents. (Filing No. 1, ¶ 5).

6. The Creatine HCl Patents are directed to creatine oral supplementation using creatine hydrochloride salt, or creatine HCl. (Filing No. 1-1, p. 2; Filing No. 1-2, p. 2; Filing No. 1-3, p. 2).

7. The Complaint asserts the Creatine HCl Patents against GNC, alleging direct infringement in Counts I-III. (Filing No. 1, ¶¶ 46, 55, 64).

**Assignment History And Terminal Disclaimer Of The Creatine HCl Patents**

8. A search of the publicly available, USPTO assignment records indicates that the Creatine HCl Patents were assigned to Vireo and the University. (Holst Decl., ¶¶ 2-10).

9. The public assignment records at the USPTO for the '450 Patent indicate that the ownership rights were assigned from inventors Donald Miller and Jonathan Vennerstrom to the University and from inventor Mark Faulkner to Vireo. (Holst Decl., ¶¶ 2-4). No further assignments are recorded at the USPTO. (*Id*.).

10. Likewise for the '685 Patent, the public assignment records at the USPTO indicate that the ownership rights were assigned from inventors Donald Miller and Jonathan Vennerstrom to the University and from inventor Mark Faulkner to Vireo. (Holst Decl., ¶¶ 5-7). No further assignments were recorded at the USPTO. (*Id*.).

11. The same is true for the '424 Patent, wherein the public assignment records at the USPTO indicate that the ownership rights were assigned from inventors Donald Miller and Jonathan Vennerstrom to the University and from inventor Mark Faulkner to Vireo. (Holst Decl., ¶¶ 8-10). No further assignments were recorded at the USPTO. (*Id*.).

12. During prosecution of the '450 Patent, the owners, Vireo and the University, were required to file a terminal disclaimer on November 16, 2012 to obviate a double patenting

3

rejection over two prior patents, U.S. Patent No. 8,026,385 ("the '385 Patent") and U.S. Patent No. 7,608,641 ("the '641 Patent"). (Holst Decl., ¶ 11).

13. The public assignment records at the USPTO for the '641 Patent indicate that on August 8, 2004, inventors Donald Miller and Jonathan Vennerstrom assigned their entire right, title and interest in the invention to Biovance Technologies, Inc., 11515 No. 84th Street, Omaha, NE 68122 ("Biovance"). (Holst Decl., ¶¶ 12, 13).

14. The public assignment records at the USPTO for the '641 Patent further indicate that on October 21, 2007, inventor Jonathan Vennerstrom assigned his ownership rights to the University. (Holst Decl., ¶¶ 12, 14).

15. The public assignment records at the USPTO for the '641 Patent further indicate that on September 9, 2008, inventor Donald Miller assigned his ownership rights to the University. (Holst Decl., ¶¶ 12, 15).

16. The public assignment records at the USPTO for the '641 Patent still further indicate that on March 22, 2011, inventor Mark Faulkner assigned his ownership rights to Vireo. (Holst Decl., ¶¶ 12, 16).

17. The Creatine HCl Patents claim priority to earlier filed U.S. patent applications. In particular, the '424 Patent is a continuation of the '685 Patent, which is a divisional of the '450 Patent, which is a continuation-in-part of the '385 Patent, which is a continuation of the '641 Patent. (Filing No. 1-1, p. 2; Filing No. 1-2, p. 2; Filing No. 1-3, p. 2).

18. There is no recordation at the USPTO that Biovance ever assigned its ownership rights in the '641 Patent, the Creatine HCL Patents, or the invention to the University, Vireo or NE Enterprises. (Holst Decl., ¶¶ 2, 5, 8, 12).

## II.     LEGAL STANDARD

A complaint may be dismissed under Federal Rule of Civil Procedure (12)(b)(7) for "failure to join a party under Rule 19." It is well-settled that a co-owner of a patent is a necessary and indispensable party to an action for patent infringement. *See, e.g., Ethicon, Inc. v. United States Surgical Corp.*, 135 F.3d 1456, 1467-68 (Fed. Cir. 1998) ("An action for infringement must join as plaintiffs all co-owners."). "Precedent establishes that all entities with the right to enforce the patent are necessary parties to an action for enforcement; the purpose is to shield the accused infringer from multiple suits, as well as to resolve all potential claims efficiently and fairly." *STC.UNM v. Intel Corp.*, 754 F.3d 940, 947 (Fed. Cir. 2014). For these reasons in a patent infringement case, the baseline standing rule is that all the owners of the asserted patent must be named to the action. *See Israel Bioengineering Project v. Amgen, Inc.*, 475 F.3d 1256, 1264-65 (Fed. Cir. 2007) ("Absent the voluntary joinder of all co-owners of a patent, a co-owner acting alone will lack standing.") (internal quotations and citations omitted).

A complaint may also be dismissed under Fed.R.Civ.P. 12(b)(6) for "failure to state a claim upon which relief can be granted." Pleading requirements are governed by Fed.R.Civ.P. 8(a)(2), which requires that all complaints filed must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." To meet this requirement, a complaint must satisfy the facial-plausibility standard set forth in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* The plausibility standard applies to claims for direct

patent infringement.  *See Battle Sports Sci., LLC v. Shock Doctor, Inc.*, 225 F. Supp. 3d 824, 835 (D. Neb. 2016).

In evaluating a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, "[t]he court accepts as true all factual allegations, but is 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Midwest Athletics & Sports All. LLC v. Xerox Corp.*, No. 8:17CV478, 2018 WL 1400426, *1 (D. Neb. Mar. 20, 2018) (quoting *McAdams v. McCord*, 584 F.3d 1111, 1113 (8th Cir. 2009)). Particularly in patent infringement cases, a complaint must set forth "allegations plausibly suggesting (not merely consistent with)" infringement of every element of at least one claim of the patent. *See Twombly*, 550 U.S. at 545.  For example, a complaint composed of "labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do." *Twombly*, 550 U.S. at 555.

To survive a motion to dismiss, the complaint must contain "[f]actual allegations [that are] enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Indeed, Fed.R.Civ.P. 8(a)(2) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Midwest Athletics & Sports All. LLC*, 2018 WL 1400426 at *2 (quoting *Iqbal*, 556 U.S. at 678).  "A complaint that alleges facts that are 'merely consistent with' a defendant's liability 'stops short of the line between possibility and plausibility.'" *Midwest Athletics & Sports All. LLC*, 2018 WL 1400426 at *2 (quoting *Twombly*, 550 U.S. at 557). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

6

### III. ARGUMENTS

### A. Plaintiffs Failed To Join Necessary And Indispensable Parties Under Fed.R.Civ.P. 12(b)(7).

The Complaint should be dismissed under Fed.R.Civ.P. 12(b)(7) because Plaintiffs failed to join or include co-owners of the Creatine HCl Patents as parties in this action. Specifically, Plaintiffs failed to join assignees Board of Regents of the University of Nebraska (the "University") and Biovance Technologies, Inc. or its successors-in-interest ("Biovance").

Pursuant to Fed.R.Civ.P. (12)(b)(7), a complaint may be dismissed for "failure to join a party under Rule 19." A co-owner of a patent is a necessary and indispensable party to an action for patent infringement. *See Ethicon, Inc.*, 135 F.3d at 1467-68. The Federal Circuit has "explicitly" held that "Rule 19 does not permit the involuntary joinder of a patent coowner in an infringement suit brought by another coowner." *DDB Techs., L.L.C. v. MLB Advanced Media, L.P.,* 517 F.3d 1284, 1289 n. 2 (Fed.Cir. 2008). Thus as a matter of substantive patent law, "all co-owners must ordinarily consent to join as plaintiffs in an infringement suit." *Ethicon*, 135 F.3d at 1468. "Furthermore, one co-owner cannot join the other owner or owners as involuntary plaintiffs or defendants, even if the latter are subject to the jurisdiction of the court." Donald S. Chisum, 8 *Chisum on Patents: A Treatise on the Law of Patentability, Validity, and Infringement* 21-548 – 21-549 (Matthew Bender & Co. 2005).

Moreover, rules of procedure such as that in Fed.R.Civ.P. 19(a), must give way to substantive patent rights. 28 U.S.C. § 2072 (2012); *see, e.g., Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 613, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) ("[R]ules of procedure 'shall not abridge, enlarge or modify any substantive right.'" (quoting § 2072)). The right of a patent co-owner to impede an infringement suit brought by another co-owner is a substantive right that trumps the procedural rule for involuntary joinder under Rule 19(a). *See STC.UNM v.*

*Intel Corp.*, 754 F.3d 940, 946 (Fed.Cir. 2014). Consequently, "one co-owner has the right to impede the other co-owner's ability to sue infringers by refusing to voluntarily join in such a suit." *Ethicon, Inc.*, 135 F.3d at 1468 (Fed.Cir. 1998).

### 1. The Board Of Regents Of The University Of Nebraska Is A Necessary And Indispensable Party Without Which The Complaint Must Be Dismissed.

The Complaint acknowledges that the Creatine HCl Patents are co-owned by Vireo and the University. (Filing No. 1, ¶ 4). The Complaint merely alleges—without factual support—that the University "granted NE Enterprises all of its substantial rights in the Patents, including the exclusive rights to license the University's right to the Patents." (Filing No. 1, ¶ 5). *Some* of its rights in the Creatine HCl Patents, the Complaint alleges, NE Enterprises licensed to Vireo. (Filing No. 1, ¶ 6). However, the Complaint is utterly devoid of any documentation demonstrating that Vireo and NE Enterprises have obtained from the University "all substantial rights" in the Creatine HCl Patents.

Courts have held that similar, threadbare assertions in a complaint of allegedly obtaining "all substantial rights" to a patent do not suffice in overcoming Rule 19's requirement of including a co-owner in an action for patent infringement. For example in *Speedplay, Inc. v. Bebop, Inc.*, the plaintiff had asserted that it "obtained all substantial rights" in the patents at issue, and therefore it could sue for infringement in its own name. 211 F.3d 1245, 1250 (Fed. Cir. 2000). The court held that to support that assertion, however, the plaintiff "must produce a written instrument documenting the transfer of proprietary rights in the patents." *Speedplay, Inc.*, 211 F.3d at 1250. Other district courts have also required a showing of written instruments that demonstrate transfer of ownership as compared to naked assertions. *See Biagro W. Sales Inc. v. Helena Chem. Co.*, 160 F. Supp. 2d 1136, 1144 (E.D. Cal. 2001) ("The party asserting that it has all substantial rights in the patent must produce written instruments documenting the

8

transfer of proprietary rights." (citations omitted)). Moreover, a written instrument transferring all substantial rights under the patent at issue to the licensee must have been in effect at the time of filing the complaint in order to confer standing on a licensee. *See, e.g., Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1093 (Fed.Cir. 1998).

Here Plaintiffs failed to provide any documentation showing that they had obtained "all substantial rights" to the Creatine HCl Patents from the University at the time of filing their Complaint. Indeed the publicly-available assignment records at the USPTO for the Creatine HCl Patents indicate to the contrary.[1] *See* SOF, *¶¶* 8-11.

Thus according to the public assignment records of the USPTO, the Creatine HCl Patents are currently co-owned by Vireo and the University. *See* SOF, ¶¶ 8-11. The public assignment records give no indication that NE Enterprises has any ownership interest in the Creatine HCl Patents, and Plaintiffs have failed to provide any documentation showing otherwise. *Id*. Plaintiffs' only support that this litigation may proceed to the exclusion of the University is the

---

[1] In reviewing a motion to dismiss under Fed.R.Civ.P. 12, the court is "not precluded in [its] review of the complaint from taking notice of items in the public record." *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007) (citing *Papasan v. Allain*, 478 U.S. 265, 269 n.1 (1986); *Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003) ("The district court may take judicial notice of public records and may thus consider them on a motion to dismiss")). The Eighth Circuit has further held that motions to dismiss "are not automatically converted into motions for summary judgment simply because one party submits additional matters in support of or opposition to the motion." *State ex rel. Nixon v. Coeur D'Alene Tribe,* 164 F.3d 1102, 1107 (8th Cir. 1999); *see Levy,* 477 F.3d at 991–92 (holding that it was "not necessary to convert the motion to dismiss to one for summary judgment" where district court considered a public record, a state court dismissal, in granting a motion to dismiss). Other district courts have also considered public records outside the pleadings in granting motions to dismiss. *See EMD Crop Bioscience Inc. v. Becker Underwood, Inc.*, 750 F. Supp. 2d 1004, 1008 (W.D. Wis. 2010) ("Because defendant's motion to dismiss raises questions of standing and jurisdiction, I have considered materials outside the pleadings in resolving the standing matter, as the court is permitted to do."); *Apex Digital, Inc. v. Sears, Roebuck & Co.,* 572 F.3d 440, 443–44 (7th Cir.2009); *Capitol Leasing Co. v. Federal Deposit Insurance Corp.,* 999 F.2d 188, 191 (7th Cir.1993) (evaluating the facts from the pleadings and the documents the parties have submitted in connection with their briefing of the motions and granting Defendant's motion to dismiss for lack of standing and failure to join an indispensable party).

conclusory statement that NE Enterprises was granted "all of [the University's] substantial rights in the Patents," which is insufficient as a matter of law to permit this litigation to proceed. *See Speedplay, Inc.*, 211 F.3d at 1250. Accordingly, the Complaint should be dismissed for failing to name the University – a necessary and indispensable party to this litigation. *See Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1093 (Fed.Cir. 1998) (written instrument conveying substantially all rights must be in place at the time the complaint was filed).

### 2. Biovance Is A Necessary And Indispensable Party Without Which The Complaint Must Be Dismissed.

Plaintiffs also failed to include or join co-owner Biovance in this lawsuit. The public assignment records at the USPTO for the '641 Patent indicate that on August 8, 2004 inventors Donald Miller and Jonathan Vennerstrom assigned their entire right, title and interest in the "Creatine Oral Supplementation Using Creating Hydrochloride Salt" invention to Biovance. SOF, ¶ 13. In the assignment, Miller and Vennerstrom granted to Biovance, "its successors and assigns, CREATINE ORAL SUPPLEMENTATION USING CREATINE HYDROCHLORIDE SALT as fully and entirely as the same would have been held and enjoyed by" Miller and Vennerstrom if the assignment had not been made. This assignment was for the "creatine oral supplementation using creatine hydrochloride salt" inventions of Miller and Vennerstrom's included in the '641 Patent (U.S. Pat. App. Serial No. 10/846,786). *Id*. The Creatine HCl Patents, which are directed to and entitled "Creatine Oral Supplementation Using Creatine Hydrochloride Salt" (Filing No. 1, ¶¶ 23-25) and claim priority to the '641 Patent, are included within the scope of this assignment. SOF, ¶¶ 13, 17. There is no recording at the USPTO or even allegation in the Complaint that Biovance ever assigned its ownership rights in the inventions, the '641 Patent, or the Creatine HCL Patents to the University, Vireo, NE Enterprises

10

or back to the inventors. SOF, ¶ 18. Plaintiffs do not allege otherwise. (*See* Filing No. 1). Thus Biovance or its successors-in-interest remain co-owner(s) of the Creatine HCl Patents.

Because Plaintiffs failed to include Biovance or its successors-in-interest in this lawsuit, the Complaint should be dismissed under Fed.R.Civ.P. 12(b)(7) for failure to join necessary and indispensable parties.

### B. The '450 Patent Is Unenforceable In View Of Terminal Disclaimer And Thus Count I Of The Complaint Should Be Dismissed Under Fed.R.Civ.P. 12(b)(6) If Biovance Is Not An Owner Of The '450 Patent.

Pursuant to Fed.R.Civ.P. 12(b)(6), even if the Court determines that Biovance is not the owner of the '450 Patent, Count I of the Complaint, which alleges infringement of the '450 Patent, should be dismissed because the '450 Patent is unenforceable as a matter of law in view of a terminal disclaimer filed during prosecution at the USPTO.[2]

During prosecution of the '450 patent, the owners, Vireo and the University, were required to file a terminal disclaimer on November 16, 2012 to obviate a double patenting rejection over two prior patents, the '641 Patent and the '385 Patent. SOF, ¶ 12. In the terminal disclaimer, Vireo and the University agreed that any patent granted for the application of the '450 Patent would only remain enforceable as long as it remained commonly owned with the '641 Patent, stating:

> The owner hereby agrees that any patent so granted on the instant application shall be enforceable only for and during such period that it and the prior patent are commonly owned. This agreement runs with any patent granted on the instant application and is binding upon the grantee, its successors or assigns.

(Holst Decl., ¶ 11 (quoting November 16, 2012 Terminal Disclaimer)).

---

[2] An applicant for patent may disclaim or dedicate to the public the entire term, or any terminal part of the term, of a patent to be granted. *See* 37 CFR § 1.321. Such "terminal disclaimer" is binding upon the grantee and its successors or assigns and must be recorded in the USPTO. *Id.*

11

However, as explained above, the public assignment records at the USPTO for the '641 Patent indicate that inventors Donald Miller and Jonathan Vennerstrom assigned their ownership rights to Biovance Technologies, Inc. ("Biovance") on August 8, 2004. SOF, ¶ 13. Miller and Vennerstrom subsequently and purportedly assigned their ownership rights in the '641 Patent to the University. SOF, ¶¶ 14-15. Inventor Mark Faulkner assigned his ownership rights to Vireo on March 22, 2011. SOF, ¶ 16.

There is no recordation at the USPTO that Biovance ever assigned its ownership rights in the '641 Patent to the University, Vireo or NE Enterprises or back to Miller and Vennerstrom. SOF, ¶ 18.

On the other hand, Plaintiffs have alleged in the Complaint that the Creatine HCl Patents, including the '450 Patent, are co-owned by Vireo and the University. (Filing No. 1, ¶ 4). Plaintiffs have further alleged in the Complaint that the University granted "all of its substantial rights" to NE Enterprises. (Filing No. 1, ¶ 5). Plaintiffs have not alleged in the Complaint that Biovance transferred all its ownership interest in the '641 Patent to Vireo, to the University, or to NE Enterprises.

Thus, to the extent that the Court determines Biovance is not an owner of the '450 Patent (which Defendant does not concede), according to the plain language of the terminal disclaimer, the '450 Patent is unenforceable as a matter of law because the '641 Patent would not be owned by the same entities. For example in the analogous case *Voda v. Medtronic Inc.,* the district court noted that under the plain language of the terminal disclaimer the patent "shall be enforceable only for and during such period that it" was commonly owned. 2011 WL 10820070, *2 (W.D. Okla. Aug. 17, 2011). Upon reviewing the assignment records, the court found that the relevant patents were no longer commonly owned. *Voda*, 2011 WL 10820070 at *2. Thus, the

district court held that the patent was unenforceable as a matter of law and granted a motion to dismiss. *Id*. at 2-3. The same conclusion should apply here.

## IV. CONCLUSION

For these reasons GNC respectfully requests dismissal of Plaintiffs' Complaint, particularly, for Plaintiffs' failure to join necessary and indispensable parties and because the '450 Patent is unenforceable as a matter of law in view of the terminal disclaimer filed during prosecution of that patent.

Dated: October 17, 2018.                          Respectfully Submitted,

*/s/ Luke C. Holst*
Luke C. Holst, Neb. I.D. # 23834
lholst@mcgrathnorth.com
MCGRATH NORTH MULLIN & KRATZ, PC LLO
First National Tower, Suite 3700
1601 Dodge Street
Omaha, NE 68102
Tel: 402.341.3070

And

Anthony W. Brooks
Barry J. Coyne
John W. McIlvaine, III
*Admitted Pro Hac Vice*
THE WEBB LAW FIRM
One Gateway Center
420 Ft. Duquesne Blvd., Suite 1200
Pittsburgh, PA 15222
abrooks@webblaw.com
bcoyne@webblaw.com
jmcilvaine@webblaw.com

*Attorneys for Defendant GNC Holdings, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on October 17, 2018, the foregoing was filed with the Clerk of the Court using the CM/ECF system, which sent a copy to all counsel of record.

Carol A. Svolos, # 24731
John P. Passarelli, # 16018
Robert M. Slovek, # 17798
Jason S. Jackson, # 25030
KUTAK ROCK LLP
The Omaha Building
1650 Farnam Street
Omaha, NE 68102-2186
Telephone: (402) 346-6000
Facsimile: (402) 346-1148
jason.jackson@kutakrock.com
john.passarelli@kutakrock.com
robert.slovek@kutakrock.com
carol.svolos@kutakrock.com

*Attorneys for Plaintiff Vireo Systems, Inc.*

Andre R. Barry, # 22505
CLINE WILLIAMS WRIGHT JOHNSON &
OLDFATHER, L.L.P.
1900 U.S. Bank Bldg.
233 South 13th Street
Lincoln, NE 68508
Telephone: (402) 474-6900
Facsimile: (402) 474-5393
abarry@clinewilliams.com

*Attorneys for Plaintiff NE Enterprises Inc.*

                */s/ Luke C. Holst*
                Luke C. Holst